An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-262

Filed 5 November 2025

Wilkes County, Nos. 22CR357573-960, 22CR357579-960, 22CR357583-960, 22CR357587-960, 22CR357598-960, 22CR357605-960, 22CR357608-960, 22CR357612-960, 23CR000217-960, 23CR000218-960

STATE OF NORTH CAROLINA

v.

STEPHANIE LEANN RHODES

Appeal by defendant from judgment entered 22 July 2024 by Judge William Anderson Long in Wilkes County Superior Court. Heard in the Court of Appeals 15 October 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Torrey D. Dixon, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for the defendant-appellant.*

TYSON, Judge.

Stephanie Leann Rhodes ("Defendant") appeals from the trial court's judgment entered upon her *Alford* plea to multiple offenses. We affirm.

## I. Background

Defendant was indicted for one count of the class H felony of exploitation of an older adult and eight counts of the Class G felony obtaining property by false pretenses on 1 May 2023. Defendant was also indicted for attaining habitual felon status.

Defendant's case came for a plea hearing on 22 July 2024. The trial court conducted an extensive colloquy with Defendant. Defendant told the trial court she was entering an *Alford* plea as a part of a plea agreement to present mitigating factors without any agreement with the State regarding sentencing. *See North Carolina v. Alford*, 400 U.S. 25, 27 L.Ed.2d 162 (1970). The State had filed notice to present and seek multiple aggravating factors. The State provided a factual basis to support the *Alford* plea:

> These offenses occurred between January 7 and October of 2022, Judge. Ms. Rhodes had a previous relationship with our victim Mr. Christian who is in the courtroom here today. He was the CEO of a company Henson Health Medical Technologies, I believe is the name of that company. Ms. Rhodes was employed there. I've spoken with Mr. Christian; I believe she was a good employee. They had a working relationship. That plant that Ms. Rhodes was working at was sold. She continued to be in contact with Mr. Christian after that. She did do some work on the Henson and Health Medical Technologies website, then in December of 2021, she started requesting money in the form of a loan from Mr. Christian. Between that time and then all the way actually into November of 2022, there was a volume of Cash app transactions where Ms. Rhodes had a repeated pattern of basically having different situations come up in her life and requesting cash payments or cash loans. She would make promises to repay the next day, the next week, Friday, various different

promises. And so she – and, specifically, I'll go through a few of these dates that are alleged in the obtaining property by false pretenses. Between January 7 through January 12, 2022, Ms. Rhodes obtained $300 via Cash app which is an electronic money transfer from Mr. Christian. That was to pay for an attorney fee so that she could cash a check on an inheritance and pay back the victim towards the loans that he'd already made. I would contend that she did all of that with no intent to ever pay him back. The second set of obtaining property by false pretense was February 23, 2022, through February 24th of 2022. That was a transaction for $100, also an electronic cash transfer from Mr. Christian. On that occasion, defendant requested $100 loan from the victim to pay for fixing a busted pipe. Defendant agreed to pay the victim back, by including the hundred dollars in a payment made to the victim the next day. Of course, that payment never materialized, and the defendant did so without any intent to actually pay him. The third is between March 3rd, 2022 and March 4th of 2022, the defendant obtained $400. That was a loan, again, electronic cash transfer from Mr. Christian. A $400 loan for new tires. Promised to pay that back the next day on Cash app. Of course, that didn't happen.

April 4th of 2022 was the next obtaining $165 electronic transfer from Mr. Christian. That was made for a hotel room and defendant promised to pay the victim back for that and failed to do so. Moving on to offense dates between June 2nd and June 3rd of 2022. That was a $162 transfer that was for cell phone service to pay for the defendant's cell phone service, so she would have phone service to call the bank to verify the bank wire to the victim for a payment on prior loans. The next was between June 30 and July the 5th. On that date, it was $497 electronic cash money transfer. The defendant requested and received that money from the victim to pay for court costs associated with the failure to appear and arrest in July 2022. Based on the detective's investigation, that was just a fabrication. There was no arrest in July of 2022. August the 1st of 2022 was $336 false pretense consist of the following: The defendant, while pretending to be a person named Jericho, requested

to receive $336 from the victim to pay for a cash bond that
the defendant was placed under after her arrest in August
of 2022, and she was not arrested in August of 2022.
September 1st and September 2nd that was a $275
electronic money transfer from Mr. Christian. That was for
costs associated with defendant traveling home from the
State of Virginia to be at the bank at 10:00 a.m. to complete
a bank wire for money to the victim for previous loans.
Again, the defendant did that, and we contend with no
intent to ever make payment. I spoke with Mr. Christian.
Like I told the court earlier, the total amount of these
transactions for the entire period of time was $70,436. The
restitution amount will likely be less because I will have to
go in and remove some of these that extend beyond the
dates of offense, so it will be somewhat less, but it is still
going to be a significant amount. None of these were large
transactions. They were all, you know, relatively 300, $400
at the max for the most part (sic).

Defendant stipulated to a total of $70,436 as restitution owed to Mr. Christian.

The prosecuting attorney noted deductions to this amount would be credited due to

the passage of time. The revised restitution worksheet reflected a total amount of

$58,130. The trial court found: (1) a factual basis for the entry of the plea; (2)

Defendant was satisfied with the competency of her counsel's legal services; (3) she

was competent to stand trial; (4) the plea was an informed choice she had made freely,

voluntarily, and understandingly; and, (5) accepted her plea.

The trial court continued sentencing until later in the day, proceeded with

sentencing, and gave Defendant's counsel an opportunity to speak on her behalf.

Defendant's counsel argued for her to be sentenced within the mitigated range.

Defendant's counsel also requested forty-eight hours for Defendant to get her affairs

in order prior to reporting for any potential active sentence.

The trial court denied Defendant's request for forty-eight hours before her reporting for execution of sentence. Defendant then asked for a delay in sentencing until "tomorrow morning at least." Defendant then stated:

> May I say something? I really for real I wanted to take this to the jury trial, and I still have that on – in my stomach that I wanted to do, and that's what I was contacted a couple of attorneys too on the outside for the fact of – I don't — I have so many things that I would like to present in lieu of this case. There are so many things that I would have to take and print off and have for you in lieu of everything that I want to show. And I want somebody to see that, that says about me, about the relationship between me and Mr. Christian. Mr. Christian is a wonderful man. And all I want to do is be able to pay him his money back. I can have you $5000 this week on it.

After the trial court again denied her request, Defendant asked "Can we pick a jury and let me go for a jury trial then?" The trial court denied this request.

Defendant never argued against or objected to the sufficiency of the State's evidence as a basis for her *Alford* plea. The trial court rendered judgment and consolidated all nine offenses under the abuse of position of trust Class G felony charge. Defendant's habitual felon status elevated the Class G felony judgment to a Class C felony judgment.

The trial court sentenced Defendant as a prior record level IV offender with 10 prior record level points to an active sentence in the mitigated range of 66 to 92 months. Defendant appeals.

## II. Jurisdiction

Defendant has filed a Petition for Writ of *Certiorari* contemporaneous with her

principal brief regarding the lack of a factual basis to support her *Alford* plea. N.C.

Gen. Stat. § 15A-1444(e) (2023) provides:

> Except as provided in subsections (a1) and (a2) of this
> section and G.S. 15A-979, and except when a motion to
> withdraw a plea of guilty or no contest has been denied, the
> defendant is not entitled to appellate review as a matter of
> right when he has entered a plea of guilty or no contest to
> a criminal charge in the superior court, but he may petition
> the appellate division for review by writ of certiorari. If an
> indigent defendant petitions the appellate division for a
> writ of certiorari, the presiding superior court judge may in
> his discretion order the preparation of the record and
> transcript of the proceedings at the expense of the State.

N.C. Gen. Stat. § 15A-1444(e) (2023).

Our Supreme Court has held:

> When the language of [N.C. Gen. Stat. § 15A-1444(e)] is
> read conversely, it provides that when a motion to
> withdraw a plea of guilty or no contest has been denied, the
> defendant is entitled to appellate review as a matter of
> right when he has entered a plea of guilty or no contest to
> a criminal charge in the superior court.

*State v. Dickens*, 299 N.C. 76, 79, 261 S.E.2d 183, 185 (1980).

A prior panel of this Court, has held: "a defendant who has entered a guilty

plea is not entitled to appellate review as a matter of right, unless the defendant is

appealing sentencing issues or the denial of a motion to suppress, or the defendant

has made an unsuccessful motion to withdraw the guilty plea." *State v. Crawford*,

278 N.C. App. 104, 115, 861 S.E.2d 18, 27 (2021) (citations omitted).

In *Crawford*, this Court reviewed a defendant's motion to withdraw an *Alford* plea as a matter of right and dismissed the defendant's petition for a writ of *certiorari*. *Id.* Here, as in *Crawford*, Defendant made a motion to withdraw her *Alford* plea. She is entitled to review of the denial of her motion to withdraw as a matter of right. In the exercise of our discretion, we dismiss her Petition for Writ of *Certiorari* as moot.

## III.    Issues

Defendant argues the trial court erred by denying her motion to withdraw her *Alford* plea and by accepting her guilty plea without the State providing a factual basis for the exploitation of an older adult charge.

## IV.    Defendant's Motion to Withdraw

Defendant argues the trial court erred by denying her motion to withdraw her *Alford* plea.

## A.  Standard of Review

Our Court has held:

> In reviewing a decision of the trial court to deny [a] defendant's motion to withdraw, the appellate court does not apply an abuse of discretion standard, but instead makes an independent review of the record. That is, the appellate court must itself determine, considering the reasons given by the defendant and any prejudice to the State, if it would be fair and just to allow the motion to withdraw.

*State v. Mashburn*, 109 N.C. App. 105, 108, 425 S.E.2d 715, 718 (1993) (internal

citation and quotation marks omitted). This Court conducts the same analysis for a plea of guilty or an *Alford* plea. *State v. Chery*, 203 N.C. App. 310, 314, 691 S.E.2d 40, 44 (2010) (citations omitted).

## B. Analysis

"Although there is no absolute right to withdraw a guilty plea, withdrawal motions made prior to sentencing, and especially at a very early stage of the proceedings, should be granted with liberality." *State v. Meyer*, 330 N.C. 738, 742-43, 412 S.E.2d 339, 342 (1992) (citations and internal quotation marks omitted).

"In a case where the defendant seeks to withdraw his guilty plea before sentence, he is generally accorded that right if he can show any fair and just reason." *State v. Handy*, 326 N.C. 532, 536, 391 S.E.2d 159, 161 (1990). "The defendant has the burden of showing that his motion is supported by some 'fair and just reason.'" *Mashburn*, 109 N.C. App. at 108, 425 S.E.2d at 717 (citation omitted).

Factors which our Supreme Court and this Court have held to support a determination the reason is "fair and just" are:

> the defendant's assertion of legal innocence; the weakness of the State's case; a short length of time between the entry of the guilty plea and the motion to withdraw; that the defendant did not have competent counsel at all times; that the defendant did not understand the consequences of the guilty plea; and that the plea was entered in haste, under coercion or at a time when the defendant was confused. If the defendant meets his burden, the court must then consider any substantial prejudice to the State caused by the withdrawal of the plea.

*Id.* at 108, 425 S.E.2d at 717-18 (citation omitted).

Our Supreme Court has further examined the balancing of *Handy* factors in

*State v. Taylor*, holding:

> In considering each *Handy* factor individually, a court is not required to expressly find that a particular factor benefits either the defendant or the State in assessing whether a defendant has shown any fair and just reason for the withdrawal of a guilty plea. In *Handy*, this Court listed "some of the factors which favor withdrawal." This depiction of the identification of the *Handy* factors inherently illustrates that the slate of them is not intended to be exhaustive nor definitive; rather, they are designed to be an instructive collection of considerations to aid the court in its overall determination of whether sufficient circumstances exist to constitute any fair and just reason for a defendant's withdrawal of a guilty plea.

*State v. Taylor*, 374 N.C. 710, 723, 843 S.E.2d 46, 55 (2020) (internal citations

omitted).

Defendant argues the State did not submit any factual basis to support the

exploitation of an older adult charge. This Court "view[s] the State's proffer based

upon what was presented to the [trial] court at the plea hearing." *Chery*, 203 N.C.

App. at 315, 691 S.E.2d at 45. The forecasted evidence at the plea hearing shows the

State presented a strong evidentiary case against Defendant. Christian, the elderly

victim, was available in court to testify against Defendant. The proffer established a

prior business relationship between Defendant and Christian. This factor weighs in

favor of the State.

Defendant further argues she entered an *Alford* plea, she "steadfastly asserted

her innocence." This Court has repeatedly held: "the fact that the plea that [a] defendant seeks to withdraw was a no contest or an *Alford* plea does not conclusively establish the factor or assertion of legal innocence for purposes of the *Handy* analysis." *Crawford*, 278 N.C. App. at 110, 861 S.E.2d at 24 (citing *Chery*, 203 N.C. App. at 315, 691 S.E.2d at 44). Defendant stated "[A]ll I want to do is be able to pay him his money back." Defendant has failed to show how entering a knowing *Alford* plea with a supported factual basis and restitution worksheet weights in favor of withdrawal. This factor weighs in favor of the State.

Defendant asserts her desire to withdraw her *Alford* plea was voiced right after pleading. Our Court has "placed heavy reliance on the length of time between a defendant's entry of a guilty plea and motion to withdraw the plea." *State v. Robinson*, 177 N.C. App. 225, 229, 628 S.E.2d 252, 255 (2006). In *Handy*, our Supreme Court explained:

> A swift change of heart is itself strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's legitimate interests. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

*Handy*, 326 N.C. at 539, 391 S.E.2d at 163 (citation omitted).

In *Handy*, the defendant moved to withdraw his guilty plea less than twenty-four hours after it was entered, because he "had an opportunity to more fully consider

[the] decision and pray about it overnight, as well as discuss it with his mother and with his attorneys." *Id.* at 540-41, 391 S.E.2d at 163-64. The defendant testified he "felt that he was under pressure under the circumstances" and told the court he "had misgivings about [entering the guilty plea] at the time the plea was entered." *Id.*

Our Supreme Court held the defendant "made a sufficient showing of a fair and just reason to withdraw his plea of guilty" because the defendant showed he changed his mind "at a very early stage of the proceedings." *Id.* at 542, 391 S.E.2d at 164. In *Robinson*, this Court held waiting three-and-a-half months after it was entered to withdraw his guilty plea was not a "fair and just" reason. *Robinson*, 177 N.C. App. at 230, 628 S.E.2d at 255.

Here, while the motion to withdraw the plea was made during the same hearing as the plea, Defendant offered a different reason than in *Handy*. Defendant requested to withdraw her *Alford* plea after the trial court had denied her requests to delay a potential active prison sentence for forty-eight hours. Defendant did not have a "swift change of heart" to indicate the "plea was entered in haste and confusion." *Handy*, 326 N.C. at 539, 391 S.E.2d at 163. Defendant's motive was to delay the sentencing hearing for forty-eight hours or to the following morning, and not an objection to sentencing. Defendant has failed to show how this factor supports withdrawal of her *Alford* plea.

Defendant does not argue any of the remaining *Handy* factors: she received ineffective assistance of counsel, she did not understand the consequences of her

*Alford* plea, the *Alford* plea was entered in haste or under coercion, or she was confused.

Defendant has failed to show the timeliness of her motion supports withdrawal. Defendant indicated her desire to withdraw was to seek a two-day delay in starting to serve any prison sentence and was not based on a swift change of heart. The State made a significant factual basis and detailed proffer of evidence against her. Defendant failed to show a "fair and just reason" for the withdrawal of her plea. *Robinson*, 177 N.C. App. at 230, 628 S.E.2d at 255. Defendant's argument is overruled.

## V. Sufficient Factual Basis

Defendant argues the trial court erred in accepting her plea with the State's factual basis. Defendant asserts nothing in the factual basis supports the exploitation of an older adult charge.

### A. Standard of Review

This Court reviews the sufficiency of a factual basis *de novo*. *Crawford*, 278 N.C. App. at 115, 861 S.E.2d at 27 (citation omitted).

### B. Analysis

N.C. Gen. Stat. § 15A-1022(c) (2023) requires a trial court to determine if there is a factual basis for the plea, prior to accepting the guilty plea:

> The judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea. This determination may be based upon

information including but not limited to:

(1) A statement of the facts by the prosecutor.

(2) A written statement of the defendant.

(3) An examination of the presentence report.

(4) Sworn testimony, which may include reliable hearsay.

(5) A statement of facts by the defense counsel.

N.C. Gen. Stat. § 15A-1022(c) (2023).

"The five sources listed in [N.C. Gen. Stat. § 15A-1022(c)] are not exclusive, and . . . the trial judge may consider any information properly brought to his attention." *State v. Collins*, 221 N.C. App. 604, 606, 727 S.E.2d 922, 924 (2012) (citation omitted). The statute "contemplate[s] that some substantive material independent of the plea itself appear of record which tends to show that [the] defendant is, in fact, guilty." *State v. Sinclair*, 301 N.C. 193, 199, 270 S.E.2d 418, 421-22 (1980). Such information "must appear in the record, so that an appellate court can determine whether the plea has been properly accepted." *Id.* at 198, 270 S.E.2d at 421.

Defendant asserts the trial court erred in accepting her *Alford* plea because the factual basis did not address the exploitation of an older adult charge. Contrary to her argument, the factual basis and the indictment provide a sufficient factual basis to affirm the trial court's acceptance of her *Alford* plea to the exploitation of an older adult.

The elements of the crime of exploitation of an older adult are:

> It is unlawful for a person: (i) who stands in a position of trust and confidence with an older adult or disabled adult, or (ii) who has a business relationship with an older adult or disabled adult to knowingly, by deception or intimidation, obtain or use, or endeavor to obtain or use, an older adult's or disabled adult's funds, assets, or property with the intent to temporarily or permanently deprive the older adult or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the older adult or disabled adult.

N.C. Gen. Stat. § 14-112.2(b) (2023).

N.C. Gen. Stat. § 14-112.2(a)(2) (2023) defines an "older adult" as "A person 65 years of age or older." The State's factual basis provided there was a prior position of trust and business relationship between Defendant and Christian. The factual basis described a narrative about multiple CashApp requests as loans and how Defendant had lied about the true purpose of the loans and her intent to repay the loans. The State provided, and Defendant stipulated to $70,436.00 due as restitution with credits due to the passage of time. The revised restitution worksheet provided $58,130.00 as due. Mr. Christian was present at the hearing and could be observed throughout the colloquy. The indictment also alleged Christian was "an older adult within the meaning of [N.C. Gen. Stat. §] 112.2(a)." The factual basis described how the money taken was to benefit Defendant.

The factual basis provides sufficient information for an independent judicial determination of Defendant's actual guilt in this case, as required by N.C. Gen. Stat.

§ 15A-1022(c) (2023).  The trial court did not err in accepting Defendant's *Alford* plea.

## VI.  Conclusion

Defendant failed to demonstrate she had a "fair and just reason" for withdrawing her *Alford* plea.  *Robinson*, 177 N.C. App. at 230, 628 S.E.2d at 255.  The trial court did not err in accepting Defendant's *Alford* plea. Defendant was sentenced in the mitigated range on multiple charges despite the State providing her prior notice to seek aggravating factors.

The trial court did not err by failing to further continue sentencing and to provide Defendant with two additional days prior to imposition and execution of sentence after an intensive colloquy and written findings and entry and acceptance of her knowing plea and carrying sentence over to later in the day.  We affirm judgments entered upon Defendant's *Alford* plea.  *It is so ordered.*

AFFIRMED.

Judges ZACHARY and ARROWOOD concur.

Report per Rule 30(e).